### GORE v. GLOVER.

(Supreme Court, Appellate Term. March 12, 1906.)

CHATTEL MORTGAGES—BILL OF SALE AS CHATTEL MORTGAGE—PAROL EVIDENCE.
     A contract to construct and sell chattels, they at all times to be the property of the purchaser, may be shown by parol to be a chattel mortgage.
     [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Chattel Mortgages, § 44.]

     Giegerich, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

Action by Frank E. Gore against Claire G. Glover. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before SCOTT, P. J., and GIEGERICH and GREENBAUM, JJ.

Conville & Martin (Francis Martin, of counsel), for appellant.

Welch, Heine & Fall (M. Casewell Heine, of counsel), for respondent.

SCOTT, P. J. In my opinion no question as to the power of the Municipal Court to entertain an equitable defense is involved in this appeal. The defendant does not seek by his defense to alter or reform the written instrument, but merely seeks to show the entire agreement between the parties. Every chattel mortgage involves in terms an absolute transfer of title, and in contemplation of law the title does pass to the mortgagee subject to being divested by the performance by the mortgagor of the condition. It is that condition which distinguishes a chattel mortgage from an absolute bill of sale, and it is well settled that the condition need not be inserted in the bill of sale itself, but may be evidenced by a contemporaneous agreement outside of the bill of sale. This is what the defendant contended and the court found was the state of facts in the present case. It is apparent that justice has been done by the judgment appealed from, and there is grave danger that injustice would result if we were to reverse the judgment with an opinion which would virtually compel a judgment in defendant's favor upon a new trial. We should not be astute to find a means of attaining that end.

The judgment should be affirmed, with costs.

GREENBAUM, J., concurs.

GIEGERICH, J. (dissenting). I dissent from the conclusion reached in the prevailing opinion that the defendant sought by his defense merely to show the entire agreement, and not to alter or reform the writing. The agreement in question is as follows:

"I, C. G. Glover, of the city of New York, doing business at 100 Nassau street, borough of Manhattan, city of New York, party of the first part, do hereby contract with Frank E. Gore, of the city of New York, party of the second part, to build for the party of the second part, for the sum of six hundred ($600) dollars. and to be delivered in six weeks from date of this instrument, the following described machinery: Six number 6¾ inch C. G. Glover National Wire stitchers, upon the following conditions, to wit: Said party of the first part to draw between the 2d day of December, 1904, and the 13th day of January, 1905, a sum not exceeding six hundred ($600) dollars, on which no amount larger than one hundred ($100) dollars to be drawn weekly. and said machinery to be the property of the party of the second part at any and all times.                                        · C. G. Glover.   ,
        "Witness:   John A. Rooney."

The installments were paid by the plaintiff as provided, but after the machines were built, instead of delivering them to the plaintiff, the defendant sold them for the sum of $990, turning over to the plaintiff only $520. This action is brought in conversion to recover the difference of $470.

The defendant pleaded, and was allowed to give evidence at the trial, that the transaction was a loan of money, and not a purchase of the machine, and that only the sum of $80, with certain interest, remained due, for which amount the court rendered judgment, and from which judgment the plaintiff has appealed. The plaintiff's attorney made proper objection, on the ground that the parol evidence admitted tended to alter, vary, and contradict a written contract, and on the ground of the lack of jurisdiction of the court to entertain the defense.

I recognize the rule referred to in the prevailing opinion, that it is competent to show by parol evidence that an absolute bill of sale was intended to operate as a chattel mortgage simply. This rule and its history were discussed in Marsh v. McNair, 99 N. Y. 174, 1 N. E. 660, where the court observed that the rule was an exception to the general rule of evidence forbidding the contradiction or explanation of written instruments by parol evidence, and that it had long been established in the law of this state; that it grew up in the equity courts from the efforts of equity judges to prevent forfeitures, to relieve against frauds, and to enforce the equitable maxim, "Once a mortgage always a mortgage." It was supposed that the evidence did not contradict the instrument, but simply showed the purpose for which it was given, and that the instrument, although purposely made absolute, was so made simply for the purpose of giving security to the party to whom it was given, which was not really inconsistent with its form. Hence, it was conceived that parol evidence showing the purpose was not an invasion of the general rule forbidding such evidence to vary, explain, or contradict a written instrument. The rule, having been established in chancery, was finally, after the Code, and the union of law and equity jurisdiction in the same court, made applicable to cases both in law and in equity. In that case the plaintiff had assigned a life insurance policy to one Gibson, by an assignment absolute in form, for the express consideration of one

dollar "and for other valuable considerations." On the same day, and at the same place, she, with her two sons, also executed an instrument, of which the following is a copy:

"This is to certify that in consideration of crediting C. H. Marsh at the Exchange Bank of Lima $363.72, paying mortgage (on property formerly deeded by J. R. Marsh, in Avon, to C. W. Gibson) given by William F. Russell to C. H. Marsh, $110.46, and indorsing $35.82 note made by C. H. Marsh June 8, 1871, for $300, we jointly and severally sell, assign, and transfer all our right, title, and interest to two policies, Nos. 4277 and 4287, upon the lives of Charles H. Marsh and John R. Marsh, issued by the National Life Insurance Company of the United States of America, to Chauncey W. Gibson, of Lima, N. Y.

"Dated Avon, N. Y. May 23, 1872.                    .          J. R. Marsh,
                                                                  "C. H. Marsh,
                                                                  "Mary Marsh."

Upon the trial the plaintiff gave parol evidence tending to show that the instrument was executed by her upon the assurance that it was only intended as collateral security, and that she assigned it for that purpose. In summing up its conclusion, the court held that both instruments must be construed together, and said (page 179 of 99 N. Y., page 662 of 1 N. E.):

"This instrument is more than an assignment; it contains what both parties agreed to do. It shows that the assignment was made for the purposes mentioned, and precisely what Gibson was to do in consideration thereof. He became bound to do precisely what was specified for him to do, and he could have been sued by the assignors for damages if he had failed to perform. Hence the instrument is not a mere assignment or transfer of the policy; it is a contract in writing, within the rule which prohibits parol evidence to explain, vary, or contradict such contracts."

All this is as true of the contract before us in this case as it was of that contract.

So far as concerns the danger that injustice will be done if this judgment is reversed with an opinion which would virtually compel a judgment in plaintiff's favor upon a new trial, that is a consideration which ought not to influence this court in a case as plain as this upon the law. The same consideration is present in many cases where the rule against varying a writing by parol is enforced. Moreover, it is by no means clear that the defendant would be without a remedy. In this case, as in Marsh v. McNair, supra, there was no allegation nor proof that the execution of the instrument was induced by any fraud, or that it was executed by the parties under any mutual mistake of fact, but simply that the instrument was intended to be held and used as collateral security. The court further observed in that case that, if the plaintiff could show that the agreement failed to express the real intent of the parties through their mutual mistake, she could have it reformed; or, if she could show that she was induced to execute it by the fraud of Gibson, she might have it annulled. It is true, therefore, in one sense, that no question of the power of the Municipal Court to entertain an equitable defense is involved in this appeal, because, as just shown, the judgment is one that should be reversed even if obtained in a court having equity powers. If, however, a reversal had been ordered, then the question of the power of the Municipal Court would be involved in determining which, if either, of the remedies pointed out in Marsh v. McNair, supra, would be available to the defendant upon a new trial in

the Municipal Court, which has jurisdiction where the defendant sets up fraud to defeat a written contract, as he is setting up a legal, not an equitable, defense in such a case; and to the extent that he asks for no affirmative relief, the district court had, and the Municipal Court has, jurisdiction. Estelle v. Dinsbeer, 9 Misc. Rep. 485, 30 N. Y. Supp. 226; Malkemesius v. Pauly, 17 Misc. Rep. 371, 39 N. Y. Supp. 1095; Milella v. Simpson (Sup.) 94 N. Y. Supp. 464. Where, however, the defense is not based on fraud, but on grounds cognizable only in equity, I do not think the Municipal Court could entertain it, as its power to entertain equitable defenses is limited to such defenses in summary proceedings. Municipal Court Act, Laws 1902, p. 1490, c. 580, § 2, subd. 2.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.