(151 App. Div. 279.)

### KENT v. FISK et al.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

1. WILLS (§ 470*)—CONSTRUCTION—TESTATOR'S INTENT.

A will should be construed as an entirety to effectuate testator's clear intent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 988; Dec. Dig. § 470.*]

2. WILLS (§ 470*)—CONSTRUCTION—EFFECT AS TO SEPARATE PROVISIONS.

A will should be so construed as to give full effect to every part thereof, if that can be done without violence to any of its provisions.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 988; Dec. Dig. § 470.*]

3. WILLS (§ 616*)—CONSTRUCTION—INTEREST GIVEN.

A will giving testator's wife all his personalty remaining after payment of his debts, giving her the use of his land during her life, with the exclusive right to dispose of so much of the land as she might consider necessary for her support, "leaving all with her to do as she deems best," and giving an adopted daughter all the real estate that might remain undisposed of by the wife at her death, entitles the daughter on the wife's death to the proceeds remaining from sales of land made by the wife, and evidenced by notes and mortgages.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1418–1430; Dec. Dig. § 616.*]

Houghton and Lyon, JJ., dissenting.

Appeal from Special Term, Clinton County.

Action by Rosey T. Kent against Friend Fisk and another, Mary T. Tuttle's administrators. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

S. E. Maders, for appellant.
Fred M. La Duke, for respondents.

BETTS, J. Samuel D. Tuttle, a resident of the county of Essex, in this state, made and executed his will July 10, 1865. Three provisions of that will are in controversy here and are as follows:

"First. I give and bequeath to my beloved wife Mary Tuttle at my decease all of my personal property that may remain after the payment of my just debts and funeral expenses.

"Second. I do further give and bequeath to my wife aforesaid the use of all my real estate during her natural life and if at any time she thinks more

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is necessary for her support than the above bequest then she may have the exclusive right to sell and dispose of a portion of said real estate, or so much of same as she may consider necessary for her support during her natural life, and in case of sale be made for her to give a conveyance therefor the same as I might or could do if living, leaving all with her to do as she deems best.

"Thirdly. I give and bequeath to my adopted daughter Rosey Tuttle now aged about eight years all of my real estate that may remain undisposed of by my wife aforesaid at the time of her decease."

He made his wife, Mary Tuttle, the sole executrix.

He died December 10, 1885, and his will was probated in Essex county February 16, 1886, and Mary Tuttle qualified as such executrix. She died intestate January 28, 1911. May 22, 1911, letters of administration upon her estate were duly issued to the defendants.

It appears by the complaint that at the time of his death Samuel D. Tuttle owned three pieces of real estate which are described in the complaint in this action. It is alleged in the complaint that in 1902 Mary Tuttle sold one of these parcels of real estate for $480, and took a bond from the purchaser and a purchase-money mortgage for $430 as part of the consideration for the conveyance, and that at the time of the commencement of this action there was $345 due upon this bond and mortgage unpaid; that about January 26, 1904, Mary Tuttle sold the second piece of real estate for which she took a promissory note from the purchaser bearing date on that day for $700, which note remained unpaid at the date of her death, and the statute had not run against the payment of the same, and there was remaining unpaid thereon the sum of about $945; that on October 13, 1909, Mary Tuttle conveyed the third piece of real estate for the sum of $2,500, and also took a bond and purchase-money mortgage thereon to secure that amount, and at the time of her death there was unpaid thereon the sum of $2,500 and more. The complaint alleges that the defendants claim the possession of said bonds and mortgages and note as the administrators of Mary Tuttle, and have inventoried the same as her property. The value of the property was $3,790. Plaintiff is the person named in the will as Rosey Tuttle, and at all times since the death of Mary Tuttle was and is now the absolute owner and entitled to the immediate possession of the said bonds, mortgages, and note, and the same has been twice demanded and refused, and the plaintiff asks judgment for the possession of the said securities, or, if delivery cannot be had, for the value thereof.

The defendants demurred to the complaint on the grounds: (1) That it appears on the face thereof that the court has not jurisdiction of the subject of the action; (2) that it appears upon the face of the complaint that the same does not state facts sufficient to constitute a cause of action. The demurrer coming on to be heard at Special Term was sustained. The court construed the will of Samuel D. Tuttle, holding "that it was intended by the testator that there should be vested in his wife an absolute power of disposition for her own benefit, and that none of the proceeds remaining from a

sale after her death should go to his adopted daughter." From this judgment the plaintiff appeals.

It seems to be necessary to construe this will. Samuel D. Tuttle had two classes of property, personal and real estate. His personal property he gave and bequeathed absolutely to his wife, and with that we have no concern. He then gave and bequeathed to his wife aforesaid the use of all his real estate during her natural life, and provided, if at any time she thought more was necessary for her·support than the above bequest (which may mean the personal property or may mean the use of the real estate or both), then she may have the exclusive right to sell and dispose of a portion of said real estate, or so much of same as she may consider necessary for her support during her natural life, and in case sale be made for her to give a conveyance therefor, leaving all with her to do as she deems best, and in the third clause he gives and bequeaths to his adopted daughter Rosey Tuttle, then aged about eight years, all of his real estate that may remain undisposed of by his wife aforesaid at the time of her decease. The court at Special Term lays much stress on the clause "leaving all with her to do as she deems best," and it holds that, having disposed of this real estate and turned it into a different kind of property, therefore nothing is left for the remainderman.

[1-3] I do not agree with this interpretation of this will. It is necessary in construing wills to take into consideration the entire will, and to give such construction thereof as would carry out and effectuate· the clear intent of the testator. There is also another canon of construction, which is that wills should be so construed as to give full effect to every part thereof if that can be done without violence to any of its provisions. Construed in the light of these two principles, I think it is clear that the testator intended to give his wife only the use of his real estate in the first instance, but also to give her the right to sell such portion thereof as she might consider necessary for her support during her natural life, and, upon her death, all of the real estate or all of the proceeds of the real estate that might remain undisposed of by his wife should belong to his adopted daughter, Rosey Tuttle. I think that the third clause means just the same as though the testator had said: "I give and bequeath to my adopted daughter Rosey Tuttle all of my real estate or the proceeds thereof that may remain undisposed of by my wife for her support."

The authority was to sell and dispose of such portion of said real estate as she might consider necessary for her support. She had sold all the real estate, but she had not disposed of the proceeds. The real estate was her husband's to devise as he saw fit, and he provided that, whatever was not necessary for the support of his wife should belong to his adopted daughter and while the language used was not the best that could have been adopted for the purpose, yet it is doing no violence to the language to thus construe this will.

The will was dated and executed in 1865. The testator died in 1885, 20 years later. He thus lived to see his promising adopted daughter of 8 years develop into womanhood of 28, and saw no reason during that time to change his original testamentary intention. This child of 8 is now a woman of upwards of 50 years. She has waited many years for this inheritance. The executrix, Mary Tuttle, very evidently construed the will as I am construing it, as she simply turned the real estate into securities and retained them, some of the securities growing in value or amount from the time of her taking of them until the time of her death. It should not be possible under the forms of law to thus disinherit this adopted daughter of Samuel D. Tuttle. This property belongs in his estate and to this plaintiff, and not in the estate of his wife, and the taking possession of such securities by the administrators of Mary Tuttle should not be permitted to operate to divest the title and ownership of them from the residuary legatee and devisee of Samuel D. Tuttle, and carry them to the next of kin of Mary Tuttle, to be distributed in a manner entirely foreign to the will of the owner of this real estate. It may be that there is contained in these securities or in the amount due upon them income therefrom which had accrued at the time of the death of Mary Tuttle and which belongs to her estate. If so, it is a matter of defense for these administrators, and they should be required or given the opportunity to plead the same, to the end that such deduction could be made from the value of these securities and retained by the administrators, but the administrators should not be allowed to carry these securities through the process of administration in the estate of Mary Tuttle, and thus become entitled to commissions thereon, upon property which does not belong to that estate.

There may be some question as to whether the plaintiff has taken the better remedy, or whether she might more properly have procured an administrator with the will annexed to be appointed of the estate of Samuel D. Tuttle, and then procured the transfer of these securities to such administrator, but, as she is the only person interested in the estate of Samuel D. Tuttle, and the absolute owner of these securities, I cannot see that any good purpose could have been accomplished by such action on her part. These defendant administrators represent the next of kin and creditors of Mary Tuttle, and the plaintiff and such administrators are the only parties that are concerned in the property herein involved.

I think that the phrase, "leaving all with her to do as she deems best," was simply a phrase used by the testator in reference to her use of additional property, other than her life estate in this estate, and this receives some support in the authorities.

In the Matter of Blauvelt et al., 131 N. Y. 249, 30 N. E. 194, the will gave to the testator's widow during her widowhood the use of all his estate, "authorizing her to sell and dispose of any of my real estate as to her shall seem just." After her death, the property was to be divided into equal portions and given to his daughters for

life, and, upon their death, to be divided among their heirs. The widow sold certain pieces of real property. Judge Peckham, writing for a unanimous court, says:

"We have no doubt that the widow took but a life estate in the property of her husband under his will. The permission and authority given to her in such will to sell and dispose of the real estate of the testator, as to her shall seem just, when taken in connection with other provisions of the will, plainly restrict her power in the proceeds arising from the sale of such real estate to that of a life tenant only. The proceeds take the place of the realty, and are held by the same tenure. The will disposed of the entire estate of the testator after the death of the widow."

It is difficult to see how the phrase "leaving all with her to do as she deems best" is any stronger than the phrase "authorizing her to sell and dispose of any of my real estate as to her shall seem just." It would seem that the phrase in the Blauvelt Case, supra, is much stronger that the phrase used by the testator here. See, also, McKeown v. Officer, 6 N. Y. Supp. 201,[1] where testator devised the entire remainder of his property to his wife for her support and comfort to vest absolutely in her during her lifetime, and at her decease devised and bequeathed the residue to remaindermen. It appeared that the widow left the entire property of the estate unexpended, and had used and appropriated the income thereof only during her widowhood, very much the same situation as here. The court says:

"In the beaten way of common sense and fundamental principles this is a plain case. The intention of the testator is easily discovered, and the law which must control is easily understood. The primary gift was to the wife absolutely for life, and it was within her power to appropriate, enjoy, and use all the property during her lifetime, and the residuary legatees took no interest which would have authorized them to interfere with such use in any way. But the property only vested in her absolutely during her lifetime. At her decease, * * * the residue of the estate was devised and bequeathed to the two boards designated. The gift to the wife was conditional upon its use and appropriation by her during her lifetime, and the gift of the residue dependent upon the same contingency. There is no repugnancy in the gift of the property to the wife for life, with an absolute power to dispose of the same or charge it with the payment of her debts, and a subsequent provision giving the residue to the charitable boards upon the failure of the wife to dispose of or exhaust the same in her lifetime."

And see the cases there cited.

If the construction of the will here adopted is correct, it follows that the judgment appealed from should be reversed, with permission to the defendants upon the payment of costs of the demurrer and costs and disbursements of the appeal to answer within 20 days. All concur, except HOUGHTON, J., dissenting in opinion in which LYON, J., concurs.

HOUGHTON, J. (dissenting). I think the demurrer to the complaint was properly sustained on the ground that the plaintiff is not entitled to maintain her action in its present form.

The complaint clearly states a cause of action for the recovery of

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 53 Hun, 634.

chattels, and it is not claimed that it states any kind of an equitable cause of action. The demand for judgment is for the possession of the securities mentioned, ·or, in case delivery of them cannot be had, for their value. The complaint alleges that the plaintiff is the absolute owner and entitled to the immediate possession of the securities, and that she has demanded possession of them from the defendants, and that they detain the same unlawfully. The facts pleaded, however, do not show that the plaintiff has the legal title to the securities, but, on the contrary, show that the legal title to them was either in the estate of Samuel D. Tuttle, deceased, or in Mary Tuttle at the time of her death, and that her title passed to the defendants as administrators of her estate. If any title in the plaintiff at all is shown, it is an equitable title, which, under all the authorities, is insufficient to enable her to maintain an action at law for the recovery of the securities.

Under Code Civ. Proc. § 1690 et seq., an action in replevin and for the recovery of a chattel are of the same nature and the same requisites are essential to both (Scofield v. Whitelegge, 49 N. Y. 259), one having been derived from the other (Sinnott v. Feiock, 165 N. Y. 444, 59 N. E. 265, 53 L. R. A. 565, 80 Am. St. Rep. 736). "Replevin being primarily a possessory action, it is obvious that the action cannot be sustained for the purpose of trying the right of property." 34 Cyc. 1354. An equitable right to the possession of property will not support an action of replevin. National Bank of Deposit v. Rogers, 1 App. Div. 623, 37 N. Y. Supp. 365; Haas v. Altieri, 2 Misc. Rep. 252, 21 N. Y. Supp. 950; Dodworth v. Jones, 4 Duer, 201.

I agree that, under the will of Samuel D. Tuttle, his wife, Mary, in addition to his personal property, took a life estate in all of his real property with the right to sell any part of it, and use the proceeds for her comfortable and proper support and maintenance. Undoubtedly the power given to her enabled her to convey any or all of his real estate and pass a good title to the purchaser, unless the sale was collusively made for the purpose of defrauding the plaintiff. I also agree that the securities which she took for the purchase price of the real property stand in equity in place of the property itself, provided she had not used them or pledged them for her support and maintenance. This situation, however, must be established by a proper judgment in equity before such securities can belong to the plaintiff. It is an important feature of the situation that this plaintiff is not under the will a remainderman entitled to all the residue of the estate which may remain after the wife shall have used all that may have been required for her support. There is devised to her only such of the testator's real estate as may remain undisposed of by the wife at the time of her decease. Granting that the words "remain undisposed of" are equivalent to the words "remain unused for support," still I think a court of equity should pass upon the situation, and decree that the securities are entitled to take the place of the real property, and that the plaintiff is entitled to them before they can be said to take the place of such real property, and before it can be said that the plaintiff has legal title to them. The plaintiff not now having the legal

title to the securities but only an equitable one at best, she cannot maintain an action for their delivery to her.

Besides, the provisions of the will are certainly broad enough to cover the expenses of the last illness of the wife, and in the absence of any separate property of the wife to cover the expenses of her burial. The administrators of the wife were entitled to retain possession of the securities for the purpose of realizing sufficient money to pay funeral expenses and the expenses of her last sickness, and therefore the plaintiff is not entitled to immediate possession of them. The situation is quite similar to that disclosed in Seaward v. Davis, 198 N. Y. 415, 91 N. E. 1107, and the plaintiff can pursue her remedy in equity according to the procedure there pointed out.

By inadvertence undoubtedly a judgment final in form was entered on the demurrer, instead of an interlocutory one. No objection is made on this ground in the briefs and on the argument the parties treated the judgment as interlocutory and the majority of the court so treats it in the decision made, and I so regard it and vote for an affirmance of the judgment sustaining the demurrer, giving leave to the plaintiff to amend her complaint upon paying costs of the trial court and of this appeal.